UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARY H. SCOGGINS**                                                                                   **PLAINTIFF**

**V.**                              **NO. 4:19CV00639 JM-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                           **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff Mary H. Scoggins, ("Scoggins") applied for supplemental security income benefits on April 4, 2016, alleging disability beginning on November 1, 2011. (Tr. at 11). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 20). The Appeals Council denied Scoggins's request

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Scoggins has filed a Complaint seeking judicial review from this Court.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision:

The ALJ found that Scoggins had not engaged in substantial gainful activity since the application date of April 4, 2016.[2] (Tr. at 13). At Step Two, the ALJ found that Scoggins had the following severe impairments: degenerative disc disorder, depression, anxiety, fibromyalgia, history of attention deficit hyperactivity disorder ("ADHD"), and a historical fracture of the lower extremity. *Id.*

After finding that Scoggins's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Scoggins had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) she is limited to occasional stooping, crouching, bending, kneeling, crawling, stair climbing, and balancing; (2) she could perform simple, routine, and repetitive tasks with simple, direct, and concrete supervision; and (3) she would require only occasional interaction with coworkers, supervisors, and the general public. (Tr. at

---

[2] For supplemental security income claims, the relevant time-period begins on the application date. (Tr. at 11).

15).

The ALJ found that Scoggins was unable to perform any of her past relevant work. (Tr. at 18). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Scoggins's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a price marker and a housekeeper. (Tr. at 19). Thus, the ALJ found that Scoggins was not disabled. *Id*.

### III.  Discussion:

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Scoggins's Arguments on Appeal

Scoggins contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ did not properly assess the medical opinions; (3) the RFC did not fully incorporate her limitations; and (4) the ALJ did not properly consider Scoggins's subjective complaints. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

4

Scoggins suffered from back pain, lower extremity pain, and fibromyalgia.[3] However, objective testing revealed only mild-to-moderate findings. A cervical spine MRI showed no significant spinal stenosis and moderate left neural foraminal stenosis. (Tr. at 82). A lumbar MRI showed mild disc bulging and minimal foraminal narrowing, without evidence of spinal stenosis. (Tr. at 84). Thoracic and lumbar x-rays were grossly normal. (Tr. at 693-694). Scoggins had negative straight-leg raises, normal gait and station, and did not walk with an assistive device. (Tr. at 704-713, 763-801). Pain medication consistently helped Scoggins. (Tr. at 474-486, 520-530). She was able to perform home exercises and water aerobics. (Tr. at 712). Her treatment was conservative, consisting of injections, branch blocks, and medication management. (Tr. at 1008-1020). Scoggins engaged in a wide variety of daily activities, like preparing meals, caring for her grandchildren, going to doctors' appointments, shopping, doing simple chores, and spending time with family. (Tr. at 16-17, 31, 325-329). Because of the above benign record evidence, the opinion of the Disability Determination Services ("DDS") medical expert that Scoggins could perform light work were well-supported, and the ALJ properly discounted the opinion of Scoggins's PCP that she could not even perform sedentary work. (Tr. at

---

[3] Much of the evidence submitted by Scoggins is remote in time, reflecting treatment before the relevant time-period.

183, 466-467). The PCP's opinion was inconsistent with the mild objective findings and, likewise, inconsistent with his own notes that Scoggins responded positively to pain medication.[4] The RFC for light work incorporated Scoggins's physical limitations, and the ALJ properly assessed the opinion evidence.

Scoggins argues that the ALJ should have further developed the record. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Aside from Scoggins's PCP's overly restrictive opinion, the record was not in conflict, so further development was unwarranted.

As for mental limitations, Scoggins received psychiatric treatment, but she was discharged from Dayspring Behavioral Health for missing multiple

---

[4] The PCP's opinion was also only a short checkbox form, and conclusory checkbox forms with little elaboration are not entitled to great weight. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

appointments. (Tr. at 745). In addition to noncompliance, it should be noted that Scoggins tested positive for opiates and amphetamines in April 2017, and illicit drug use may complicate mental illness. (Tr. at 754).

Generally speaking, Scoggins reported that her anxiety and stress arose from family and situational stressors. (Tr. at 707-709). Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). She admitted that Adderall helped with ADHD, and she made progress in therapy. (Tr. at 516, 847, 971-978). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). In July 2016, she told her doctor that she was not depressed. (Tr. at 522). Scoggins said in September 2016 that her depression was a lot better and she no longer felt hopeless. (Tr. at 516). In April 2017, her PCP noted that Scoggins benefitted from anxiety and depression medication. (Tr. at 841). Her counselor commented that medication and counseling stabilized her symptoms. (Tr. at 983). Again, she could perform a variety of daily activities, which indicated that her mental impairments were not disabling. While one psychiatrist certified that Scoggins had a "Serious Emotional Disturbance or Serious Mental Illness," the record does not depict serious functional restrictions, and moreover, the ALJ <u>did</u> find mental conditions to be severe at Step Two. (Tr. at 13, 982).

In spite of Scoggins's ability to perform a variety of daily activities, Scoggins's counselor stated that she was severely limited due to mental impairments (Tr. at 468-472); the ALJ apparently credited this opinion in part because he limited Scoggins to unskilled work.[5] Also the RFC placed more rigorous functional restrictions on Scoggins than the DDS mental examiners assessed, demonstrating that he regarded the record fairly. (Tr. at 158-178). The ALJ weighed the record as a whole, noting that evidence received after the DDS opinions issued demonstrated some significant mental limitations. The record was developed, the RFC captured Scoggins's credible limitations, and the ALJ accounted fully for the opinion evidence.

Finally, Scoggins alleges that the ALJ did not properly consider Scoggins's subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit

---

[5] The opinion from Scoggins's counselor predated the relevant time-period. (Tr. at 468-472).

8

a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id.* In his opinion, the ALJ thoroughly discussed Scoggins's allegations of pain, her treatment (including medications and side effects), the objective testing results, and her daily activities. (Tr. at 13-19). Therefore, Scoggins's argument fails.[6]

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Scoggins was not disabled. The ALJ properly considered the subjective complaints and the medical opinions, the RFC incorporated all of Scoggins's limitations, and the record was fully developed.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 2nd day of November, 2020.

                                                          _____
UNITED STATES MAGISTRATE JUDGE

---

[6] Scoggins also argues that her Global Assessment of Functioning score ("GAF") should have been given some weight. She scored in the 40's and 50's, which means she had a serious impairment in mental functional areas. GAF scores do not directly correlate to the severity of mental disorders. *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). In fact, the Commissioner has declined to endorse the GAF scale for use in Social Security programs. *See Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). Still, the ALJ found severe mental impairments Step Two, demonstrating that he credited the evidence in the record as a whole.